IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL McCARTHY,

        Plaintiff,

        v.

LAWRENCE FIFER, ESQ.,
TARA BLAKELY, ESQ., and
FIRST AMERICAN TITLE
INSURANCE COMPANY,

        Defendants.

C.A. No. S17C-02-026 NEP
In and for Sussex County

## OPINION AND ORDER

Submitted: October 26, 2018
Decided: November 7, 2018

Before the Court is Defendant Larry Fifer's (hereinafter "Fifer") Motion to Dismiss the Amended Complaint and Plaintiff Michael McCarthy (hereinafter "McCarthy"), MJM Management Corp. (hereinafter "MJM"), and Abba First, LLC's (hereinafter "Abba," collectively with McCarthy and MJM, "Plaintiffs") Response. For the reasons set forth below, Fifer's motion is **DENIED**.

### A. Factual Background and Procedural History

The Court has addressed the background facts and procedural history in its July 18, 2018 Opinion and Order on Defendants' previously filed Motion for Judgment on the Pleadings. The Court refers to that Opinion and Order for a more

complete recitation of the facts of the case, and shall here only briefly recite the allegations of the First Amended Complaint for context.[1]

Plaintiffs' First Amended Complaint alleges that Fifer, whom McCarthy had used as his real estate attorney to purchase and title twenty-seven investment properties, had incorrectly titled certain properties in McCarthy's personal name and under the entity Abba, rather than titling them to MJM. In January of 2015, McCarthy, individually, filed for bankruptcy. Subsequently, in March of 2015, the trustee for McCarthy's bankruptcy estate (hereinafter the "Trustee") discharged certain of the properties, as they were worth less than the mortgages owed, and these properties reverted to Plaintiff personally.[2] The Trustee, however, discovered that there were problems with the collateral for one loan with County Bank, covering twelve properties, due to Fifer's error in titling the properties. The Trustee considered the properties unsecured and did not abandon them, but rather began to collect rent and attempt to market the properties for sale. In late 2016, County Bank initiated an adversarial proceeding to protect its interest in the properties and ultimately foreclosed on all of the properties instead of simply the mistitled properties.

In his original complaint filed on March 7, 2017, McCarthy specifically alleged that Fifer had committed breach of contract and malpractice by failing to title the Properties to MJM, and that as a result, McCarthy had lost all of his

---

[1] As Defendant Tara Blakely has not joined in Fifer's Motion to Dismiss, the Court does not address Plaintiffs' separate claims against her, which have been asserted in both the original and the amended complaints.

[2] *See In re Lyn*, 483 B.R. 440, 451 (Bankr. D. Del. 2012) ("The debtor holds abandoned property as if no bankruptcy had been filed.").

properties when County Bank instituted its adversarial action and subsequently foreclosed on the properties. On July 18, 2018, this Court granted Fifer's motion for judgment on the pleadings as to McCarthy's claim for breach of contract and denied it as to McCarthy's claim for malpractice. Subsequently, on August 23, 2018, a First Amended Complaint was filed adding claims of MJM and Abba for malpractice against Fifer.

### B.    Arguments of Parties

Fifer moves to dismiss MJM and Abba's claims, arguing that their claims are untimely under the statute of limitations for legal malpractice.[3] According to Fifer, an amendment setting up a new cause of action does not relate back to the date of the original pleading, but rather is governed by its own date, and adding the new plaintiffs adds new causes of action that are specific to those two entities.[4] Thus, Fifer argues that their claims cannot relate back to the date the original complaint was filed and are therefore time-barred.

Plaintiffs' respond that they added MJM and Abba as parties, but did not change the allegations of legal malpractice. McCarthy's original *pro se* complaint

---

[3] Pursuant to 10 *Del. C.* § 8106, the statute of limitations for legal malpractice is three years. McCarthy's discovery of Fifer's alleged malpractice occurred more than three years before the First Amended Complaint was filed.

 While most of the authority cited in this opinion was decided in the context of motions to amend, there is no procedural impediment to Fifer's raising the limitations issue in the context of a motion to dismiss. *See Gadow v. Parker*, 865 A.2d 515, 519 (Del. 2005) (Superior Court Civil Rules expressly allow defendant to raise limitations defense in motion to dismiss or first responsive pleading).

[4] *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 264 (Del. 1993).

3

was replete with allegations that properties owned by McCarthy, MJM, and/or Abba were lost due to the actions of Fifer. Plaintiffs therefore allege that Fifer was on notice so as to not be prejudiced in maintaining a defense against their claims, and that the claims on behalf of MJM and Abba relate back to the original complaint, as they did not seek to add new facts or change the circumstances from which those claims arose.

## C. Discussion

On a motion to dismiss, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of its [complaint] would the [plaintiff] be entitled to relief."[5] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[6] Finally, "a *pro se* pleading is judged by a 'less stringent standard' than a pleading or document filed by an attorney."[7]

---

[5] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[6] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. Super. 2002).

[7] *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982). Plaintiff filed his original complaint *pro se* and later retained counsel.

4

In order for an amendment adding a party after the running of the statute of limitations to relate back to the filing date of the action, three conditions must be met:

> (1) the claim or defense asserted in the amended pleading arose out of the same conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading;
> (2) within the period provided by law for commencing the action against the party (*i.e.,* the statute of limitations), the party to be brought in by the amendment received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; and
> (3) within the period provided by law for commencing the action against the party, the party to be brought in by the amendment knew or should have known that but for a mistake concerning the identity of the party the suit would have been brought against the party.[8]

While the above language appears to reference additional *defendants*, an amendment to add additional *plaintiffs* after the statute of limitations has run may also only be granted if the amendment satisfies the "relation back" requirements under Rule 15(c).[9] However, the cause of action concept within Rule 15(c) has been broadly defined as simply requiring that fair notice be given regarding the general fact situation out of which the claim arose.[10] Consequently, where a party seeks to add a plaintiff, and the causes of action are the same as those in the original complaint, the party seeking to amend should be required to show only "that the defendant received

---

[8] *Mullen*, 625 A.2d at 264 (citing Super. Ct. Civ. R. 15(c)).
[9] *Child, Inc. v. Rodgers*, 377 A.2d 374, 377 (Del. Super. 1977), *aff'd in part and rev'd in part sub nom. Pioneer Nat'l Title Ins. Co. v. Child, Inc.*, 401 A.2d 68 (Del. 1979).
[10] *Mullen*, 625 A.2d at 264.

sufficient notice of the claims of the proposed additional plaintiff so that the defendant will not be prejudiced in defending the claims of the additional plaintiff."[11]

Relation back under Rule 15(c) turns on whether the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. In determining whether to allow relation back under Rule 15 for a complaint that adds a new plaintiff, some courts strictly adhere to the requirements of Rule 15(c).[12] However, the Delaware Supreme Court has held that "[s]uch strict adherence is unnecessary when dealing with the addition…of a new plaintiff and contravenes the remedial policy underlying Rule 15(c)."[13] To require a plaintiff to demonstrate that, but for a mistake, additional plaintiffs would have been named in the original complaint "…serves no purpose where a defendant was originally part of the action and thus on notice of the claims before the expiration of the statute of limitations."[14]

Fifer argues that MJM and Abba's claims should be dismissed, as their claims are beyond the three-year threshold and do not relate back to the time of the initial complaint. In support of this argument, Fifer relies on this Court's decision in *Spady v. Keen*,[15] which involved an action for injuries sustained as a result of a vehicle collision. In *Spady*, the plaintiff brought the original action and subsequently attempted to amend her complaint after the statute of limitations had run in order to

---

[11] *Chaplake Holdings, LTD. v. Chrysler*, 766 A.2d at *7-8 (Del. 2001) (citations omitted).
[12] *Chaplake*, 766 A.2d at *7 (citing *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir. 1995); *Levy v. United States Gen. Accounting Office*, 1998 WL 193191 (S.D.N.Y. 1998)).
[13] *Chaplake*, 766 A.2d at *7.
[14] *Id.*
[15] 2006 WL 2559853 (Del. Super. Aug. 25, 2006).

add her son, who was also in the car during the collision and suffered injuries. This Court held that the son's claims as to the nature and extent of his injuries, their impact on his lifestyle, and/or any pain and suffering, would be specific to him and would need to be defended against separately from the plaintiff's claims.[16] Similarly, Fifer argues that the amendment adding MJM and Abba and their claims would require defense of an entirely different case on every element.

Relation back is improper when the new claim presents a new and independent theory of liability or cause of action based upon independent facts that were not set forth in the original complaint.[17] However, the claims by MJM and Abba do not present a new theory of liability or a new cause of action based upon independent facts, and Fifer misses the very purpose underlying the relation back doctrine. "Interpretation of Rule 15(c) should preserve the balance between the statute of limitations and the relation-back doctrine–encouraging the disposition of cases on their merits while ensuring defendants receive adequate notice of the claims so that they are not unduly prejudiced in defense of the action."[18] In this case, Fifer had notice through the original complaint of the allegation that he had erroneously titled properties in the names of McCarthy and Abba, rather than MJM, leading to the loss of all of the properties. It is difficult, therefore, to understand the prejudice that Fifer would experience in defending against these claims.

---

[16] *Id.* at \*2, \*3.

[17] *Mullen*, 625 A.2d at 264; *Moore ex rel. Moore v. Emeigh*, 935 A.2d 256 (Del. 2007) (TABLE); *see also Thompson v. Brandywine Sch. Dist.*, 478 F. App'x 718, 720 (3d Cir. 2012).

[18] *Chaplake*, 766 A.2d at \*7; *see Hill v. Shelander*, 924 F.2d 1370, 1377 (7th Cir. 1991) ("the very purpose underlying the relation back doctrine is to permit amendments to pleadings when the limitations period has expired, so long as the opposing party is not unduly surprised or prejudiced.").

Moreover, there are important distinctions between this case and *Spady*. Here, McCarthy filed his original complaint *pro se*. After the three-year limitations period had expired regarding McCarthy's claims against Fifer, McCarthy retained counsel who, after this Court denied Fifer's motion for judgment on the pleadings, immediately sought to amend to add MJM and Abba as plaintiffs. In *Spady*, by contrast, the plaintiff, who was represented by counsel throughout, sought to add her son as an additional plaintiff at the pretrial conference, three and a half years after the accident and over six months after the Court had indicated to the plaintiff that the statute of limitations likely precluded the son's claim but had also given the plaintiff leave to renew the request for the amendment—something the plaintiff did not do, again, until the pretrial conference.

In *London v. Alpine Contractors*,[19] the plaintiff filed a *pro se* personal injury/property damage complaint the day the statute of limitations expired naming only herself as a plaintiff. Approximately six months later, after retaining counsel, she sought to amend, *inter alia*, to add her husband as a plaintiff and herself as next friend for six of her children. In allowing the amendment, this Court noted that: (1) all of the claims in the amended complaint arose from the incident giving rise to the original complaint—the installation of a sewer lateral resulting in a sewage backup in the plaintiff's home; (2) the original complaint noted that children were affected by the backup, putting the defendant on notice of their claims; and (3) the plaintiff's husband was a party to the contract with the defendant and a co-owner of the

---

[19] 2010 WL 1138818 (Del. Super. Feb. 5, 2010).

property.[20] Similarly, all of McCarthy's claims in his First Amended Complaint arise from the incidents described in the original complaint, and Fifer was on notice from the inception of the lawsuit that MJM and Abba, along with McCarthy, had been affected by his alleged malpractice and the resulting loss of the properties.

In *Hunt v. Brandywine Nursing and Rehabilitation Center, Inc.*,[21] this Court held that the relation back doctrine "does not prohibit relation back for every new and separate claim."[22] In that case, the administrator of the decedent's estate and his unnamed "next of kin" (collectively, the "plaintiff") brought an action against a doctor and a nursing home alleging various negligence claims, including that the defendants' negligence had proximately caused a fatal hemorrhage in the decedent's upper gastro-intestinal area, that the nursing home had failed to provide adequate medical assistance, and that the defendant doctor had failed to monitor the decedent's condition.[23] The plaintiff subsequently obtained new counsel and sought to amend the complaint after the statute of limitations had run by adding the next of kin as named plaintiffs, by adding a wrongful death claim, and by expanding the complaint's negligence claims.[24]

This Court, in finding that the amended complaint related back, held that the wrongful death and expanded negligence claims arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original

---

[20] *Id.* at *2.
[21] 2000 WL 1211558 (Del. Super. Aug. 18, 2000).
[22] *Id.* at *3.
[23] *Id.* at *1-2.
[24] *Id.*

pleading.[25] Moreover, the defendants were on notice of the general fact situation out of which the claim arose.[26] "While the amended complaint raises a new and distinct theory of liability, wrongful death, it involves the originally pleaded conduct and common core of operative facts."[27] Thus, the Court found that the defendants were likely not surprised by the new wrongful death claim and would not be prejudiced by adding these new and separate causes of action. In this case, of course, the amended complaint did not raise a new theory of liability, and the original complaint certainly put Fifer on notice of the alleged conduct, the identity of MJM and Abba, and the harm allegedly suffered by them.

At oral argument, Fifer cited two prior decisions of this Court, *Debenedictis v. Delaware Authority for Regional Transit*,[28] and *Mills v. J.E.M. Enterprises, Inc.*,[29] neither of which was cited in Fifer's written motion, as supporting his assertion that MJM's and Abba's claims are barred by the applicable statute of limitations. In *Debenedictis*, the Court denied a motion to amend seeking to add a wrongful death claim on behalf of the decedent's four children as additional plaintiffs. The Court noted as integral to its decision the fact that the plaintiff had never disclosed the existence of the four additional plaintiffs during the extensive 16-month discovery period.[30] The Court also noted that the motion was "inexcusably untimely," as it was filed more than one year after the scheduling order's deadline to add or amend

---

[25] *Id.* at *2.

[26] *Id.*

[27] *Id.*

[28] 2014 WL 1365946 (Del. Super. Apr. 7, 2014).

[29] 2014 WL 6674722 (Del. Super. Nov. 17, 2014).

[30] *Debenedictis*, 2014 WL 1365946, at *3.

pleadings and would have resulted in a substantial delay of the trial date.[31] Here, of course, Fifer was aware of the existence of MJM and Abba well before the expiration of the limitations period, and there is no issue of trial delay.

In *Mills*, this Court actually permitted the plaintiff to assert a direct claim against a third-party defendant after the expiration of the limitations period where the third-party defendant was on notice as to the identity of the plaintiff and of his claims within the limitations period. Fifer was also aware of MJM and Abba and their alleged losses during the limitations period.

The Court finds that Fifer has not met his stringent burden under Rule 12(b)(6). This Court must give Plaintiffs "the benefit of all reasonable inferences that can be drawn from [their] pleading."[32] The Court must accept all well-pleaded factual allegations as true, including vague allegations if they give the opposing party notice of the claim.[33] McCarthy's original complaint contained numerous allegations that properties owned by McCarthy, MJM, and/or Abba were lost as a direct or indirect result of Fifer's negligent actions or omissions. The Court finds, upon reading the original complaint in light of McCarthy's *pro se* status, that he pled sufficient facts so as to put Fifer on notice regarding the identity of the new plaintiffs and their claims. Moreover, the Court finds that adding MJM and Abba as plaintiffs will not prejudice Fifer in defending the claims on the merits, as the addition of these

---

[31] *Id.*

[32] *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996) (quoting *USA Cafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991)).

[33] *Savor Inc.*, 812 A.2d at 896–97.

plaintiffs does not alter the theory or general fact situation out of which the legal malpractice claims arose.

**WHEREFORE**, for the foregoing reasons, Fifer's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED**.

/s/Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
oc:  Prothonotary
xc:  All Counsel of Record